**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LEDCOMM LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 6:22-cv-00301 |
| | ) |
| TARGET CORPORATION, | )  **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff LedComm LLC ("LedComm" or "Plaintiff"), by and through the undersigned counsel, hereby asserts the following claims for patent infringement against Defendant Target Corporation ("Target" or "Defendant"), and alleges as follows:

## SUMMARY

1.     LedComm owns by assignment all right, title and interest in numerous United States and foreign patents and applications including United States Patent Nos. 6,803,606, 7,012,277, 7,161,190, 7,301,176, and 7,490,959 (collectively, the "Patents-in-Suit").

2.     Target infringes the Patents-in-Suit by at least selling, without authorization, LedComm's proprietary technologies in a number of its commercial products including, *inter alia*, Target products (*e.g.*, Target Up&Up 40W A19 Soft White Bulb, Target Up&Up 90W Par38 Soft White Bulb, Target Up&Up 40W A19 Daylight Bulb, Target Up&Up 60W A19 Daylight Bulb, Target Up&Up 90W Par38 Daylight Bulb, Target Up&Up 100W A19 Daylight Bulb, Target Up&Up 65W BR30 Daylight Bulb, Target Up&Up 75W A19 Daylight Bulb, and

the Target Up&Up 75W A19 Soft White Bulb, among other substantially similar products) (collectively, the "Accused Products"). These Accused Products are marketed, offered, and distributed throughout the United States, including in this District.

3.     By this action, LedComm seeks to obtain compensation for the harm LedComm has suffered as a result of Target's infringement of the Patents-in-Suit.

## NATURE OF THE ACTION

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.     Target has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, one or more claims of LedComm's Patents-in-Suit at least by making, using, selling, and/or offering to sell the Accused Products in the United States, including in this District, and/or by importing the Accused Products into the United States.

6.     LedComm is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). LedComm seeks monetary damages for Target's infringement of the Patents-in-Suit.

## THE PARTIES

7.     Plaintiff LedComm is a Texas limited liability company with its principal place of business at 17330 Preston Rd., Dallas, Texas 75252.  LedComm is the owner of the intellectual property rights at issue in this action.

8.     Upon information and belief, Defendant Target is a corporation existing under the laws of Minnesota with a principal place of business at 1000 Nicollet Mall, Minneapolis,

Minnesota 55403. Upon information and belief, Target operates physical retail store locations in Texas, including in this judicial district, where it offers for sale the Accused Products.

## JURISDICTION AND VENUE

9.      As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

10.      This Court has personal jurisdiction over Target because Target has (i) availed itself of the rights and benefits of the laws of the State of Texas, (ii) transacted, conducted, and/or solicited business and engaged in a persistent course of conduct in the State of Texas (and in this District), (iii) derived substantial revenue from the sales and/or use of products, such as the Accused Products, in the State of Texas (and in this District), (iv) purposefully directed activities (directly and/or through intermediaries), such as shipping, distributing, offering for sale, selling, and/or advertising the Accused Products, at residents of the State of Texas (and residents in this District), (v) delivered Accused Products into the stream of commerce with the expectation that the Accused Products will be used and/or purchased by consumers in the State of Texas (and in this District), and (vi) committed acts of patent infringement in the State of Texas (and in this District).

11.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), as Target has locations in this State and District including at 5401 Bosque Blvd, Waco, Texas 76710.

**PATENTS-IN-SUIT**

**U.S. Patent No. 6,803,606**

12.     U.S. Patent No. 6,803,606 (the "'606 Patent") is titled "Light Emitting Device and Manufacturing Method Thereof" and was issued on October 12, 2004. A true and correct copy of the '606 Patent is attached as Exhibit A.

13.     The '606 Patent was filed on March 18, 2003 as U.S. Patent Application No. 10/390,180, which in turn claims priority to Japanese Patent Application No. 2002-078119 that was filed on March 20, 2002.

14.     LedComm is the owner of all rights, title, and interest in and to the '606 Patent, with the full and exclusive right to bring suit to enforce the '606 Patent, including the right to recover for past infringement.

15.     The '606 Patent is valid and enforceable under United States Patent Laws.

16.     The '606 Patent recognized problems with existing light emitting devices of the time of the invention of the '606 Patent.

17.     For instance, the '606 Patent recognized that a traditional light emitting device was prone to malfunction due to poor adherence between the light-emitting device's constituent parts. *See, e.g.*, '606 Patent at 1:24-2:17. In this respect, the '606 Patent recognized that a resin disposed between a light emitting element and reflector of the light emitting device adhered poorly to the reflector, which in turn could lead to the reflector detaching from the resin "due to heat generated in mounting the light emitting device or heat generated in operating the light emitting device." *See id*. at 1:24-31. Such detachment could further result in the destruction of an electrical connection provided by a bonding wire between the light emitting element and electrode of the light emitting device and/or result in creating a space in which water could enter

the light emitting device, thereby causing the device to malfunction. *See, e.g., id*. at 1:31-39. 21. In view of the foregoing, the '606 Patent sought to "provide a light emitting device capable of preventing detachment of a reflector from a resin." *Id.* at 1:43-45. In this respect, the '606 Patent discloses forming a face of the light emitting device's reflector into a rough surface, "so that adherence between the reflector and the resin through the rough surface of the reflector becomes relatively larger." *Id.* at 1:57-61. Advantageously, as a result of this configuration, "the reflector is hardly detached from the resin even if, for example, the light emitting device receives heat during mounting the light emitting device on the substrate or during operating the light emitting device," which helps to "ensure[] avoidance of such disadvantage as the [light emitting device's] substrate being detached from the resin, a bonding wire connected to the light emitting element being disconnected due to the detachment of the substrate from the resin, and water entering through a detachment portion between the reflector and the resin, thereby causing malfunction of the light emitting device." *Id.* at 1:62-2:5.

### U.S. Patent No. 7,012,277

18.     U.S. Patent No. 7,012,277 (the "'277 Patent") is titled "Semiconductor Light Emitting Device" and was issued on March 14, 2006. A true and correct copy of the '277 Patent is attached as Exhibit C.

19.     The '277 Patent was filed on December 23, 2003 as U.S. Patent Application No. 10/745,764, which in turn claims priority to Japanese Patent Application No. 2003-000216 that was filed on January 6, 2003.

20.     LedComm is the owner of all rights, title, and interest in and to the '277 Patent, with the full and exclusive right to bring suit to enforce the '277 Patent, including the right to recover for past infringement.

21.     The '277 Patent is valid and enforceable under United States Patent Laws. The '277 Patent recognized problems with existing light emitting devices of the time of the invention of the '277 Patent.

22.     For instance, the '277 Patent recognized that a traditional light emitting device exhibited poor light emitting efficiency, reliability, and lifetime. *See, e.g.*, '277 Patent at 1:38-2:37. In this regard, the '277 Patent recognized that the amount of current that a light emitting device's LED chip is subjected to contributes to these deficiencies. See, *e.g.*, '277 Patent at 1:38-50.

23.     To help address the aforementioned deficiencies, the '277 Patent sought to provide a light emitting device that exhibited, at least, favorable light emitting efficiency and lifetime without degrading the reliability the light emitting device's LED chip. *See, e.g., id*. at 2:32-37. To these ends, the '277 Patent discloses a light emitting device configuration in which a metal body is located under a region of a first lead frame on which the light emitting device's LED chip is mounted and under a region of a second lead frame that is electrically connected to the first lead frame. The '277 Patent contemplates that this metal body helps to reduce the negative effects resulting from the LED chip being subjected to current. *See, e.g., id*. at 1:38- 50, 2:32-49.

## U.S. Patent No. 7,161,190

24.     U.S. Patent No. 7,161,190 (the "'190 Patent") is titled "Semiconductor Light-Emitting Device and Method of Manufacturing the Same" and was issued on January 9, 2007.  A true and correct copy of the '190 Patent is attached as Exhibit E.

25.     The '190 Patent was filed on August 1, 2005 as U.S. Patent Application No. 11/193,364, which in turn claims priority to Japanese Patent Application No. 2004-225951 that

was filed on August 2, 2004.

26.     LedComm is the owner of all rights, title, and interest in and to the '190 Patent, with the full and exclusive right to bring suit to enforce the '190 Patent, including the right to recover for past infringement.

27.     The '190 Patent is valid and enforceable under United States Patent Laws.

28.     The '190 Patent recognized problems with existing light emitting devices of the time of the invention of the '190 Patent.

29.     For instance, the '190 Patent recognized that an LED having a high heat dissipation property is required to prevent temperature rises in a device that results in a decrease in optical output.  *See e.g.,* '190 Patent at 1:21-25.   According to the '190 Patent, it was common to adopt "a structure in which a submount is provided under the light-emitting element to release heat generated therefrom into a metal package via the submount to improve heat dissipation." *Id.* at 1:47-51.   However, as semiconductor light-emitting devices required extremely high luminous intensity, it became difficult to "attain the required luminous intensity only by improving the conversion efficiency from electricity to light," and attempts to increase the size of a light-emtting element itself and/or manufacture such a package became impractical.  *See, e.g., id.* at 2:3-13.

30.     To help address the aforementioned deficiencies, the '190 Patent sought to provide a light emitting device that included "a light-emitting element, a first lead frame having a main surface having the light-emitting element mounted thereon, a resin portion for fixing the first lead frame, and a heat-radiating member bonded to a back face of the first lead frame with an electrically-conductive layer containing metal interposed therebetween."  *Id.* at 2:25-31.  With this structure, the heat generated in the light-emitting element is more likely to be transferred to

the heat-radiating member via the first lead frame.  *See e.g. id.* at 2:32-34.

## U.S. Patent No. 7,301,176

31.     U.S. Patent No. 7,301,176 (the "'176 Patent") is titled "Semiconductor Light Emitting Device and Fabrication Method Thereof" and was issued on November 27, 2007. A true and correct copy of the '176 Patent is attached as Exhibit F.

32.     The '176 Patent was filed on April 22, 2005 as U.S. Patent Application No. 11/112,215 which in turn claims priority to Japanese Patent Application No. 2004-131774 that was filed on April 27, 2004.

33.     LedComm is the owner of all rights, title, and interest in and to the '176 Patent, with the full and exclusive right to bring suit to enforce the '176 Patent, including the right to recover for past infringement.

34.     The '176 Patent is valid and enforceable under United States Patent Laws.

35.     The '176 Patent recognized problems with existing light emitting devices of the time of the invention of the '176 Patent.

36.     For instance, the '176 Patent recognized a need for light emitting devices with reduced size but also recognized that simply reducing the size of constituent parts of existing light emitting devices would result in performance deficiencies.  *See, e.g.*, '176 Patent at 1:57-2:15. For example, the '176 Patent recognized that a light emitting device's light output directivity and/or lead frames' strength of security could be negatively impacted.  *See, e.g., id*.

37.     To help address the aforementioned deficiencies, the '176 Patent sought to provide a light emitting device with a reduced size that also allowed for adjustment of the directivity of output light and/or ensured the strength of the light emitting device's lead frames.  *See, e.g., id*. at 2:19-25, 3:24-31.  To these ends, the '176 Patent discloses a light emitting device

configuration in which a light transmitting resin provides a holding portion that holds the light emitting device's lead frames and a light shielding resin is formed to cover a bottom surface and a side surface of the holding portion.

## U.S. Patent No. 7,490,959

38.     U.S. Patent No. 7,490,959 (the "'959 Patent") is titled "Light Emitting Apparatus, Backlight Apparatus, And Electronic Apparatus" and was issued on February 17, 2009. A true and correct copy of the '959 Patent is attached as Exhibit G.

39.     The '959 Patent was filed on December 14, 2006 as U.S. Patent Application No. 11/639,806, which in turn claims priority to Japanese Patent Application No. 2005-363886 that was filed on December 16, 2005.

40.     LedComm is the owner of all rights, title, and interest in and to the '959 Patent, with the full and exclusive right to bring suit to enforce the '959 Patent, including the right to recover for past infringement.

41.     The '959 Patent is valid and enforceable under United States Patent Laws.

42.     The '959 Patent recognized problems with existing light emitting devices of the time of the invention of the '959 Patent.

43.     For instance, in order to "increase a luminance of a plane light-source," the '959 Patent recognized a need for "a light emitting apparatus that is thin and small in a radiation angle, in a short-axis direction, of a package, and high in coupling efficiency with respect to a light guiding plate." '959 Patent at 2:21-26, 36-41.

44.     In this respect, the '959 Patent sought to provide a "light emitting apparatus" comprising "a placement surface that includes an electrode; a light emitter that is placed on the placement surface; and a transparent sealing resin that seals the light emitter[ ] and forms a

concave surface . . . [where] the light emitter and the electrode being connected via a wire [ ] is curved in such a way that a top section of the curved wire substantially coincides with a deepest section of the concave surface." *See e.g. id*. at 2:46-56; *see also, e.g., id*. at Claim 1.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,803,606

45.    LedComm incorporates by reference and re-alleges paragraphs 12-17 of the Complaint as if fully set forth herein.

46.    Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '606 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Target products (*e.g.,*        Target  Up&Up  40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb among other substantially similar products) (collectively, the "'606 Accused Products").

47.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '606 Patent in connection with two of the '606 Accused Products (*e.g.*, the Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb). This description is based on publicly available information. LedComm reserves the right to modify this description, including, for example, on the basis of information about the '606 Accused Products that it obtains during discovery.

*1(a): A light emitting device comprising*:— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, light emitting devices that are covered by claim 1 of the '606 Patent.

As one non-limiting example, the Target Up&Up 40W A19 Soft White Bulb comprises a "light emitting device," as recited in claim 1.

To illustrate, top-down views of an example phosphor LED from the Target Up&Up 40W A19 Soft White Bulb are shown below:





As another non-limiting example, the Target Up&Up 90W Par38 Soft White Bulb comprises a "light emitting device," as recited in claim 1.

To illustrate, a top-down view of an example phosphor LED from the Target Up&Up 90W Par38 Soft White Bulb is shown below:





***1(b):  a  substrate;***— The Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb each comprise a substrate.

For example, shown below is a cross-sectional view of the example phosphor LED from the Target Up&Up 40W A19 Soft White Bulb with the substrate annotated in red:



As another example, shown below is a cross-sectional view of an example phosphor LED from the Target Up&Up 90W Par38 Soft White Bulb with the substrate annotated in red:



*1(c): a light emitting element on the substrate;—* The Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb each comprise a light emitting element on the substrate.

For example, shown below is the cross-sectional view of the example phosphor LED from the Target Up&Up 40W A19 Soft White Bulb with the light emitting element on the substrate identified:



As another example, shown below is the cross-sectional view of the example phosphor LED from the Target Up&Up 90W Par38 Soft White Bulb with the light emitting element on the substrate identified:



*1(d): a reflector on the substrate for reflecting a light beam outgoing from the light emitting element; and*— The Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb each comprise a reflector on the substrate for reflecting a light beam outgoing from the light emitting element.

For example, shown below is a top-down view of a phosphor LED from the Target Up&Up 40W A19 Soft White Bulb with the phosphor layer removed and the reflector identified:



As another example, shown below is a top-down view of a phosphor LED from the Target Up&Up 90W Par38 Soft White Bulb with the phosphor layer removed and the reflector identified:



*1(e): a resin disposed between the light emitting element and the reflector on the substrate*,— The Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb each comprise a resin disposed between the light emitting element and the reflector on the substrate.

For example, shown below is the top-down view of the example phosphor LED from the Target Up&Up 40W A19 Soft White Bulb with the LED removed and the resin disposed between the light emitting element identified:



As another example, shown below is a top-down view of the example LED from the Target Up&Up 90W Par38 Soft White Bulb with the LED removed and the resin disposed between the light emitting element identified:



*1(f): wherein a face of the reflector on that reflects a light beam outgoing from the light emitting element is formed into a rough surface.*— In the Target Up&Up 40W A19 Soft

White Bulb and the Target Up&Up 90W Par38 Soft White Bulb, a face of the reflector that reflects a light beam outgoing from the light emitting element is formed into a rough surface.

For example, a face of the reflector formed into a rough surface is shown in the below image of the Target Up&Up 40W A19 Soft White Bulb's reflector that is visible after the phosphor layer has been removed:



As another example, a face of the reflector formed into a rough surface is shown in the below image of the Target Up&Up 90W Par38 Soft White Bulb:



48.     Additionally, Defendants have been and/or currently are an active inducer of infringement of the '606 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '606 Patent under 35 U.S.C. § 271(c).

49.     Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '606 Patent while being on notice of (or willfully blind to) the '606 Patent. For instance, Defendants have supplied

and continue to supply the '606 Accused Products to customers (*e.g.*, end users and/or distributors of the Target Up&Up 40W A19 Soft White Bulb and the Target Up&Up 90W Par38 Soft White Bulb) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '606 Patent.

50.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '606 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '606 Accused Products and uses of the '606 Accused Products. *See, e.g.,* https://www.ikea.com/us/en/p/ledare-led-bulb-gx53-1000-lumen-warm-dimming-adjustable-beam-angle-80365; https://www.ikea.com/us/en/p/ryet-led-bulb-g4-100-lumen-opal-30496424/

51.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '606 Patent. For instance, Defendants know (and/or have known) of the existence of the '606 Patent or at least should have known of the existence of the '606 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '606 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '606 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '606 Patent by Defendants' customers. On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '606 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '606 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

52.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '606 Patent by offering for sale, selling, and/or importing one or more components in connection with the '606 Accused Products that contribute to the direct infringement of the '606 Patent by customers of the '606 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '606 Patent or were willfully blind to its existence since at least as early as the filing and/or service of the Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '606 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '606 Patent. Defendants have supplied (and/or continues to supply) the '606 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '606 Patent by using the '606 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendants).

53.     At least as early as the filing and/or service of the Complaint, Defendants' infringement of the '606 Patent was and continues to be willful and deliberate, thereby entitling LedComm to enhanced damages.

54.     Additional allegations regarding Defendants' knowledge of the '606 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

55.     Defendants' infringement of the '606 Patent is exceptional and entitles LedComm to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

56.     LedComm is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '606 Patent.

57.     LedComm is entitled to recover from Defendants all damages that LedComm has sustained as a result of Defendants' infringement of the '606 Patent, including, without limitation, a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,012,277

58.     LedComm incorporates by reference and re-alleges paragraphs 18-23 of the Complaint as if fully set forth herein.

59.     Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '277 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Target products (*e.g.*, the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb among other substantially similar products) (collectively, the "'277 Accused Products").

60.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '277 Patent in connection with two of the '277 Accused Products (*e.g.*, the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb).  This description is based on publicly available information.  LedComm reserves the right to modify this description, including, for example, on the basis of information about the '277 Accused Products that it obtains during discovery.

*1(a): A semiconductor light emitting device comprising*:— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, semiconductor light emitting devices that are covered by claim 1 of the '277 Patent.

As one non-limiting example, the Target Up&Up 40W A19 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

To illustrate, top-down views of an example phosphor LED chip from the Target Up&Up 40W A19 Daylight Bulb are shown in the images below:





As another non-limiting example, the Target Up&Up 60W A19 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

To illustrate, top-down views of an example LED chip from the Target Up&Up 60W A19 Daylight Bulb are shown below:





*1(b): an LED chip;*— The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb each comprise an LED chip.

For example, shown below are a top-down view and a cross-sectional view of the example phosphor LED from the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb, respectively:



As another example, shown below are a top-down view and a cross-sectional view of the phosphor LED from the Target Up&Up 60W A19 Daylight Bulb, respectively:



*1(c): a first lead frame on which said LED chip is mounted;*— The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb each comprise a first lead frame on which said LED chip is mounted.

For example, shown below is a resulting cross-sectional view of the one cross-sectioned LED chip from the Target Up&Up 40W A19 Daylight Bulb with the one cross-sectioned LED chip mounted to a first lead frame identified:



As another example, shown below is a resulting cross-sectional view of the one cross-sectioned LED chip from the Target Up&Up 60W A19 Daylight Bulb with the one cross-sectioned LED chip mounted to a first lead frame identified:



***1(d): a second lead frame electrically connected to said LED chip via a wire, and —***
The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb each comprises a second lead frame that is electrically connected to the LED chip via a wire.

For example, shown below is the cross-sectional view of the cross-sectioned phosphor LED chip from the Target Up&Up 40W A19 Daylight Bulb with a second lead frame electrically connected to the LED chip via a wire identified:



As another example, shown below are cross-sectional views of the cross-sectioned LED chip from the Target Up&Up 60W A19 Daylight Bulb with a second lead frame electrically connected to the LED chip via a wire identified:



***1(e): a resin portion surrounding a circumference of said LED chip, and fastening said first and second lead frames,—*** The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb each comprises a resin portion surrounding the circumference of the LED chip and fastening the first and second lead frames.

For example, shown below is a cross-sectional view of a cross-sectioned phosphor LED chip from the Target Up&Up 40W A19 Daylight Bulb with a resin portion surrounding the circumference of the LED chip and fastening first and second lead frames identified:



As another example, shown below is a cross-sectional view of a LED chip from the Target Up&Up 60W A19 Daylight Bulb with a resin portion surrounding the circumference of the LED chip and fastening first and second lead frames identified:



**1(f): wherein a metal body is located under a region of said first lead frame where said LED chip is mounted, and wherein the second lead frame has a portion where the wire is connected and the metal body is provided to extend to a region below said portion of the second lead frame**.— In the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb, a metal body is located under a region of the first lead frame where the LED chip is mounted and the second lead frame has a portion where the wire is connected and the metal body is provided to extend to a region below the portion of the second lead frame.

For example, this configuration is shown in the below cross-sectional view of a cross-sectioned phosphor LED chip from the Target Up&Up 40W A19 Daylight Bulb:



As another example, this configuration is shown in the below cross-sectional view of a cross-sectioned LED chip from the Target Up&Up 60W A19 Daylight Bulb:



61.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '277 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '277 Patent under 35 U.S.C. § 271(c).

62.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '277 Patent while being on notice of (or willfully blind to) the '277 Patent.  For instance, Defendants have supplied and continue to supply the '277 Accused Products to customers (*e.g.*, end users and/or distributors of the '277 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '277 Patent.

63.     Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '277 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '277 Accused Products and uses of the '277 Accused Products. *See, e.g.,* https://www.ikea.com/us/en/p/ryet-led-bulb-g4-100-lumen-opal-30496424/;

https://www.ikea.com/us/en/p/ryet-led-bulb-e12-200-lumen-chandelier-opal-00432419/

64.     Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '277 Patent. For instance, Defendants know (and/or have known) of the existence of the '277 Patent or at least should have known of the existence of the '277 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '277 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '277 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '277 Patent by Defendants' customers (*e.g.*, end users and/or distributors of the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 60W A19 Daylight Bulb).  On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '277 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '277 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

65.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '277 Patent by offering for sale, selling, and/or importing one or more

components in connection with the '277 Accused Products that contribute to the direct infringement of the '277 Patent by customers of the '277 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '277 Patent or were willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '277 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '277 Patent. Defendants have supplied (and/or continues to supply) the '277 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '277 Patent by using the '277 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendants).

66.    At least as early as the filing and/or service of this Complaint, Defendants' infringement of the '277 Patent was and continues to be willful and deliberate, thereby entitling LedComm to enhanced damages.

67.    Additional allegations regarding Defendants' knowledge of the '277 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

68.    Defendants' infringement of the '277 Patent is exceptional and entitles LedComm to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69.    LedComm is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '277 Patent.

70.     LedComm is entitled to recover from Defendants all damages that LedComm has sustained as a result of Defendants' infringement of the '277 Patent, including, without limitation, a reasonable royalty.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,161,190

71.     LedComm incorporates by reference and re-alleges paragraphs 24-30 of the Complaint as if fully set forth herein.

72.     Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '190 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Target products (*e.g.*, Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb among other substantially similar products) (collectively, the "'190 Accused Products").

73.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '190 Patent in connection with two of the '190 Accused Products (*e.g.*, the Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb).  This description is based on publicly available information. LedComm reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

*1(a): A semiconductor light-emitting device comprising*:— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, semiconductor light emitting devices that are covered by claim 1 of the '190 Patent.

As one non-limiting example, the Target Up&Up 90W Par38 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

To illustrate, a top-down view of an example phosphor LED chip from the Target Up&Up 90W Par38 Daylight Bulb is shown in the second image below:





As another non-limiting example, the Target Up&Up 100W A19 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

To illustrate, top-down views of an example phosphor LED chip from the Target Up&Up 100W A19 Daylight Bulb are shown below:





*1(b): a light-emitting element;*— The Target Up&Up 90W Par38 Daylight Bulb and the

Target Up&Up 100W A19 Daylight Bulb each comprise a light-emitting element.

For example, shown below is a cross-sectional view of the example phosphor LED from

the Target Up&Up 90W Par38 Daylight Bulb with the light-emitting element identified:



As another example, shown below is a cross-sectional view of the LED from the Target Up&Up 100W A19 Daylight Bulb with the light-emitting element identified:



*1(c): a first lead frame having a main surface having said light-emitting element mounted thereon;—* The Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb each comprise a first lead frame having a main surface having said light-emitting element mounted thereon.

For example, shown below is a resulting cross-sectional view of one cross-sectioned LED chip from the Target Up&Up 90W Par38 Daylight Bulb with a first lead frame having a main surface on which the light-emitting element is mounted identified:



As another example, shown below is a resulting cross-sectional view of one cross-sectioned LED chip from the Target Up&Up 100W A19 Daylight Bulb with a first lead frame having a main surface on which the light-emitting element is mounted identified:



**1(d): a resin portion for fixing said first lead frame, said resin portion has a reflecting portion reflecting light emitted from said light-emitting element; and—** The Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb each comprise a resin portion for fixing said first lead frame, said resin portion has a reflecting portion reflecting light emitted from said light-emitting element.

For example, shown below is a cross-sectional view of the phosphor LED chip from the Target Up&Up 90W Par38 Daylight Bulb showing the resin portion for fixing the first lead frame, and the reflecting portion reflecting light emitted from the light-emitting element:





As another example, shown below is a cross-sectional view of the phosphor LED chip from the Target Up&Up 100W A19 Daylight Bulb showing the resin portion for fixing the first lead frame, and the reflecting portion reflecting light from the light-emitting element:





*1(e): a heat-radiating member bonded to a back face of said first lead frame with an electrically-conductive layer containing metal interposed therebetween, said electrically-conductive layer is formed to extend from an area below the reflecting portion to the area outside the area covered by the reflecting portion,—* The Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb each comprises a heat-radiating member bonded to a back face of said first lead frame with an electrically-conductive layer containing metal interposed therebetween, said electrically-conductive layer is formed to extend from an area below the reflecting portion to the area outside the area covered by the reflecting portion.

For example, shown below is a cross-sectional view of a phosphor LED chip from the Target Up&Up 90W Par38 Daylight Bulb with a heat radiating member bonded to a back face of the first lead frame with an electrically-conductive layer containing metal interposed therebetween identified:





As shown above, the electrically-conductive layer is formed to extend from an area below the reflecting portion to the area outside the area covered by the reflecting portion.

In another example, shown below is a cross-sectional view of a phosphor LED chip from the Target Up&Up 100W A19 Daylight Bulb with a heat radiating member bonded to a back face of the first lead frame with an electrically-conductive layer containing metal interposed therebetween identified:





As shown above, the electrically-conductive layer is formed to extend from an area below the reflecting portion to the area outside the area covered by the reflecting portion.

74.   Additionally, Defendants have been and/or currently are an active inducer of infringement of the '190 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '190 Patent under 35 U.S.C. § 271(c).

75.   Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '190 Patent while being on notice of (or willfully blind to) the '190 Patent. For instance, Defendants have supplied and continue to supply the '190 Accused Products to customers (*e.g.*, end users and/or distributors of the '190 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '190 Patent.

76.   Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '190 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '190 Accused Products and uses of the '190 Accused Products. *See, e.g.,*

https://www.ikea.com/us/en/p/ryet-led-bulb-e12-200-lumen-chandelier-opal-00432419/;

https://www.amazon.com/Ikea-E12-Lumen-Light-Bulb/dp/B01N0EWIB6

77.     Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '190 Patent. For instance, Defendants know (and/or have known) of the existence of the '190 Patent or at least should have known of the existence of the '190 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '190 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '190 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '190 Patent by Defendants' customers (*e.g.*, end users and/or distributors of the Target Up&Up 90W Par38 Daylight Bulb and Target Up&Up 100W A19 Daylight Bulb). On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '190 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '190 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

78.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '190 Patent by offering for sale, selling, and/or importing one or more components in connection with the '190 Accused Products that contribute to the direct infringement of the '190 Patent by customers of the '190 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '190 Patent or were willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further,

Defendants offer for sale, sell, and/or import one or more components in connection with the '190 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '190 Patent. Defendants have supplied (and/or continues to supply) the Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '190 Patent by using the '190 Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendants).

79.     At least as early as the filing and/or service of this Complaint, Defendants' infringement of the '190 Patent was and continues to be willful and deliberate, thereby entitling LedComm to enhanced damages.

80.     Additional allegations regarding Defendants' knowledge of the '190 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

81.     Defendants' infringement of the '190 Patent is exceptional and entitles LedComm to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

82.     LedComm is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '190 Patent.

83.     LedComm is entitled to recover from Defendants all damages that LedComm has sustained as a result of Defendants' infringement of the '190 Patent, including, without limitation, a reasonable royalty.


**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,301,176**

84.     LedComm incorporates by reference and re-alleges paragraphs 31-37 of the Complaint as if fully set forth herein.

85.     Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '176 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Target products (*e.g.*, Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb among other substantially similar products) (collectively, the "'176 Accused Products").

86.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '176 Patent in connection with two of the '176 Accused Products (*e.g.*, the Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb). This description is based on publicly available information. LedComm reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

*1(a): A semiconductor light-emitting device comprising*:— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, semiconductor light emitting devices that are covered by claim 1 of the '176 Patent.

As one non-limiting example, the Target Up&Up 65W BR30 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

For instance, shown below is a top-down view of an example phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb:





As another non-limiting example, the Target Up&Up 75W A19 Daylight Bulb comprises a "semiconductor light emitting device," as recited in claim 1.

For instance, shown below are top down views of an example phosphor LED from the Target Up&Up 75W A19 Daylight Bulb:





*1(b): a semiconductor light emitting element;*— The Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb each comprise a semiconductor light emitting element.

For example, a cross section of a phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb was taken, and a resulting cross-sectional view is shown below with a semiconductor light emitting element identified.



As another example, a cross section of an LED from the Target Up&Up 75W A19 Daylight Bulb was taken, and a resulting cross-sectional view is shown below with a semiconductor light emitting element identified:



*1(c): a first lead frame on which said semiconductor light emitting element is mounted;—* The Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb each comprise a first lead frame on which said semiconductor light emitting element is mounted.

For example, shown below is the cross-sectional view of the phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb with an identification of a first lead frame on which the semiconductor light emitting element is mounted:



As another example, shown below is a resulting cross-sectional view of one cross-sectioned LED chip from the Target Up&Up 75W A19 Daylight Bulb with a first lead frame having a main surface on which the light-emitting element is mounted:



*1(d): a second lead frame electrically connected to said semiconductor light emitting element via a wire,; and—* The Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb each comprise a second lead frame electrically connected to said semiconductor light emitting element via a wire.

For example, shown below is the cross-sectional view of the phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb with the second lead frame electrically connected to the semiconductor light emitting element via a wire identified:



As another example, shown below are cross-sectional views of the phosphor LED chip from the Target Up&Up 75W A19 Daylight Bulb with the second lead frame electrically connected to the semiconductor light emitting element via a wire identified:



*1(e): light transmitting resin formed on said semiconductor light emitting element and on said first and second lead frames,—* The Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb each comprise a light transmitting resin formed on said semiconductor light emitting element and on said first and second lead frames.

For example, shown below is the cross-sectional view of the phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb with the light transmitting resin formed on the light emitting element and first and second lead frames identified:



As another example, shown below is the cross-sectional view of the LED from the Target Up&Up 75W A19 Daylight Bulb with the light transmitting resin formed on the light emitting element and first and second lead frames identified:



***1(f): wherein said light emitting element is surrounded by a light shielding resin, wherein leading ends of said first and second lead frames are inserted into said light transmitting resin to provide a holding portion holding said first and second lead frames***, — In the Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb, the light emitting element is surrounded by a light shielding resin, and leading ends of the first and second lead frames are inserted into the light transmitting resin to provide a holding portion holding the first and second lead frames.

For example, shown below is the cross-sectional view of the phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb with the light shielding resin and holding portion identified:





As another example, shown below is the cross-sectional view of the LED from the Target

Up&Up 75W A19 Daylight Bulb with the light shielding resin and holding portion identified:





*1(g): wherein said light shielding resin has a reflectance higher than a reflectance of said light transmitting resin, and* — In the Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb, the light shielding resin has a reflectance higher than a reflectance of the light transmitting resin.

For example, as shown below, the light shielding resin of the Target Up&Up 65W BR30 Daylight Bulb is opaque and white, whereas the light transmitting resin is largely transparent. Accordingly, on information and belief, the light shielding resin of the Target Up&Up 65W BR30 Daylight Bulb reflects a greater amount of light than the light transmitting resin.



As another example, as shown below, the light shielding resin of the Target Up&Up 75W A19 Daylight Bulb is opaque, whereas the light transmitting resin is largely transparent. Accordingly, on information and belief, the light shielding resin of the Target Up&Up 75W A19 Daylight Bulb reflects a greater amount of light than the light transmitting resin.



*1(h): wherein said light shielding resin is formed to cover a bottom surface and a side surface of said holding portion provided in said light transmitting resin*. — In the Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb, the light shielding resin is formed to cover a bottom surface and a side surface of the holding portion provided in the light transmitting resin.

For example, shown below is the cross-sectional view of the phosphor LED from the Target Up&Up 65W BR30 Daylight Bulb with the light shielding resin covering a bottom surface and a side surface of the holding portion identified:



As another example, shown below is the cross-sectional view of the LED from the Target Up&Up 75W A19 Daylight Bulb with the light shielding resin covering a bottom surface and a side surface of the holding portion identified:



87.     Additionally, Defendants have been and/or currently are an active inducer of infringement of the '176 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '176 Patent under 35 U.S.C. § 271(c).

88.     Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '176 Patent while being on notice of (or willfully blind to) the '176 Patent. For instance, Defendants have supplied and continue to supply the '176Accused Products to customers (*e.g.*, end users and/or distributors of the '176 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '176 Patent.

89.     Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '176 Patent. As one example, Defendants promote, advertise, and instruct customers or potential customers about the '176 Accused Products and uses of the '176 Accused Products. *See, e.g.,* https://www.ikea.com/us/en/p/maglehult-led-cabinet-picture-light-aluminum-color-10464891/; https://www.ikea.com/us/en/p/ledare-led-bulb-par20-e26-500-lumen-warm-dimming-20482856/

90.     Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '176 Patent. For instance, Defendants know (and/or have known) of the existence of the '176 Patent or at least should have known of the existence of the '176 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '176 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '176 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '176 Patent by Defendants' customers (*e.g.*, end users and/or distributors of the Target Up&Up 65W BR30 Daylight Bulb and the Target Up&Up 75W A19 Daylight Bulb). On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '176 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '176 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

91.     Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '176 Patent by offering for sale, selling, and/or importing one or more

components in connection with the '176 Accused Products that contribute to the direct infringement of the '176 Patent by customers of the '176 Accused Products. In particular, as set forth above, Defendants have had actual knowledge of the '176 Patent or were willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '176 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '176 Patent. Defendants have supplied (and/or continues to supply) the '176 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '176 Patent by using the Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendants).

92.     At least as early as the filing and/or service of this Complaint, Defendants' infringement of the '176 Patent was and continues to be willful and deliberate, thereby entitling LedComm to enhanced damages.

93.     Additional allegations regarding Defendants' knowledge of the '176 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

94.     Defendants' infringement of the '176 Patent is exceptional and entitles LedComm to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

95.     LedComm is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '176 Patent.

96.     LedComm is entitled to recover from Defendants all damages that LedComm has sustained as a result of Defendants' infringement of the '176 Patent, including, without limitation, a reasonable royalty.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,490,959

97.     LedComm incorporates by reference and re-alleges paragraphs 38-44 of the Complaint as if fully set forth herein.

98.     Defendants have infringed and are infringing, either literally or under the doctrine of equivalents, the '959 Patent in violation of 35 U.S.C. § 271 et seq., directly and/or indirectly, by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States without authority or license, the Target products (*e.g.*, the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb among other substantially similar products) (collectively, the "'959 Accused Products").

99.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of claim 1 of the '959 Patent in connection with one of the '959 Accused Products (*e.g.*, the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb). This description is based on publicly available information. LedComm reserves the right to modify this description, including, for example, on the basis of information about the '959 Accused Products that it obtains during discovery.

*1(a): A light emitting apparatus, comprising::*— Defendants, directly and/or indirectly, make, use, sell, and/or offer to sell in the United States, and/or import into the United States, semiconductor light emitting devices that are covered by claim 1 of the '959 Patent.

As one non-limiting example, the Target Up&Up 40W A19 Daylight Bulb comprises a "semiconductor light emitting apparatus," as recited in claim 1.

For instance, top-down views of an example semiconductor light-emitting apparatus from the Target Up&Up 40W A19 Daylight Bulb are shown below:





As another example, top-down views of an example semiconductor light-emitting apparatus from the Target Up&Up 75W A19 Soft White Bulb are shown below:





***1(b): a placement surface that includes an electrode;*** — The Target Up&Up 40W A19

Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb comprises a placement surface

that includes an electrode.

For example, shown below are top down views of an LED from the Target Up&Up 40W

A19 Daylight Bulb with a placement surface that includes an electrode identified:





As another example, shown below are top down views of an LED from the Target Up&Up 75W A19 Soft White Bulb with a placement surface that includes an electrode identified:





*1(c): a light emitter that is placed on the placement surface;—*  The Target Up&Up

40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb comprises a light

emitter that is placed on the placement surface.

For example, shown below is a cross-sectional view of the LED from the Target Up&Up

40W A19 Daylight Bulb with the light emitter placed on the placement surface identified:



As another example, shown below is a cross-sectional view of the LED from the Target Up&Up 75W A19 Soft White Bulb with the light emitter placed on the placement surface identified:



***1(d): a transparent sealing resin that seals the light emitter, and forms a concave surface that is a light-outgoing surface via which light outgoes,—*** The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb each comprises a transparent sealing resin that seals the light emitter, and forms a concave surface that is a light-outgoing surface via which light outgoes.

For example, shown below is a cross-sectional view of the LED from the Target Up&Up 40W A19 Daylight Bulb with a transparent sealing resin that seals the light emitter and forms a concave surface identified:







As shown above, the formed concave surface is a light-outgoing surface through which light outgoes.

As another example, shown below is a cross-sectional view of the LED from the Target Up&Up 75W A19 Soft White Bulb with a transparent sealing resin that seals the light emitter and forms a concave surface identified:







As shown above, the formed concave surface is a light-outgoing surface through which light outgoes.

***1(e): the concave surface facing a surface of the light emitter, from which surface light is emitted; and—*** In the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb, the concave surface faces a surface of the light emitter, from which surface light is emitted.

For example, shown below is a cross-sectional view of the LED from the Target Up&Up 40W A19 Daylight Bulb with the concave surface facing a surface of the light emitter identified:



As another example, shown below is a cross-sectional view of the LED from the Target Up&Up 75W A19 Soft White Bulb with the concave surface facing a surface of the light emitter identified:



***1(f): the light emitter and the electrode being connected via a wire that is curved in such a way that a top section of the curved wire substantially coincides with a deepest section of the concave surface,*** — The Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb each includes a  light emitter and the electrode being connected via a wire that is curved in such a way that a top section of the curved wire substantially coincides with a deepest section of the concave surface.

For example, shown below is a cross sectional view of the LED from the Target Up&Up 40W A19 Daylight Bulb with the light emitter and the electrode connected via a wire that is curved in such a way that a top section of the curved wire substantially coincides with a deepest section of the concave surface:



As another example, shown below is a cross sectional view of the LED from the Target Up&Up 75W A19 Soft White Bulb with the light emitter and the electrode connected via a wire that is curved in such a way that a top section of the curved wire substantially coincides with a deepest section of the concave surface:



100.    Additionally, Defendants have been and/or currently are an active inducer of infringement of the '959 Patent under 35 U.S.C. § 271(b) and a contributory infringer of the '959 Patent under 35 U.S.C. § 271(c).

101.    Indeed, Defendants have been and/or currently are intentionally causing, urging, and/or encouraging customers to directly infringe one or more claims of the '959 Patent while being on notice of (or willfully blind to) the '959 Patent. For instance, Defendants have supplied and continue to supply the '959 Accused Products to customers (*e.g.*, end users and/or distributors of the '959 Accused Products) while knowing that use of these products in their intended manner will directly infringe one or more claims of the '959 Patent.

102.    Defendants have been and/or currently are knowingly and intentionally encouraging and aiding customers to engage in such direct infringement of the '959 Patent. As

one example, Defendants promote, advertise, and instruct customers or potential customers about the '959 Accused Products and uses of the '959 Accused Products. *See, e.g.,* https://www.ikea.com/us/en/p/molgan-led-light-white-battery-operated-60263729/; https://www.ikea.com/us/en/p/dioder-led-4-piece-light-strip-set-white-20119418/

103.    Defendants know (and/or have known) that such encouraging and aiding does (and/or would) result in their customers directly infringing the '959 Patent. For instance, Defendants know (and/or have known) of the existence of the '959 Patent or at least should have known of the existence of the '959 Patent but were willfully blind to its existence. Indeed, Defendants have had actual knowledge of the '959 Patent since at least as early as the filing and/or service of the Complaint. And, as a result of their knowledge of the '959 Patent (and/or as a direct and probable consequence of their willful blindness to this fact), Defendants specifically intend (and/or have intended) that their encouraging and aiding does (and/or would) result in direct infringement of the '959 Patent by Defendants' customers (*e.g.*, end users and/or distributors of the Target Up&Up 40W A19 Daylight Bulb and the Target Up&Up 75W A19 Soft White Bulb). On information and belief, Defendants specifically intend (and/or have intended) that their actions will (and/or would) result in direct infringement of one or more claims of the '959 Patent and/or subjectively believe (and/or have believed) that their actions will (and/or would) result in infringement of the '959 Patent but have taken (and/or took) deliberate actions to avoid learning of those facts.

104.    Additionally, Defendants have been and/or currently are contributorily infringing one or more claims of the '959 Patent by offering for sale, selling, and/or importing one or more components in connection with the '959 Accused Products that contribute to the direct infringement of the '959 Patent by customers of the '959 Accused Products. In particular, as set

forth above, Defendants have had actual knowledge of the '959 Patent or were willfully blind to its existence since at least as early as the filing and/or service of this Complaint. Further, Defendants offer for sale, sell, and/or import one or more components in connection with the '959 Accused Products that are not staple articles of commerce suitable for substantial noninfringing use, and Defendants know (or should know) that such component(s) were especially made or especially adapted for use in infringement of the '959 Patent. Defendants have supplied (and/or continues to supply) the '959 Accused Products that comprise such component(s) to customers, who then directly infringe one or more claims of the '959 Patent by using the Accused Products in their intended manner (*e.g.*, pursuant to instructions provided by Defendants).

105.    At least as early as the filing and/or service of this Complaint, Defendants' infringement of the '959 Patent was and continues to be willful and deliberate, thereby entitling LedComm to enhanced damages.

106.    Additional allegations regarding Defendants' knowledge of the '959 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

107.    Defendants' infringement of the '959 Patent is exceptional and entitles LedComm to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

108.    LedComm is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '959 Patent.

109.    LedComm is entitled to recover from Defendants all damages that LedComm has sustained as a result of Defendants' infringement of the '959 Patent, including, without limitation, a reasonable royalty.

## **JURY DEMAND**

LedComm hereby demands a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff LedComm Communications, LLC respectfully requests:

A.      That Judgment be entered that Defendants have infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.      An award of damages sufficient to compensate LedComm for Defendants' infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendants' willful infringement;

C.      That the case be found exceptional under 35 U.S.C. § 285 and that LedComm be awarded its reasonable attorneys' fees;

D.      Costs and expenses in this action;

E.      An award of prejudgment and post-judgment interest; and

F.      Such other and further relief as the Court may deem just and proper.


Dated: March 21, 2022                              Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com

**THE MORT LAW FIRM, PLLC**
106 E. Sixth Street, Suite 900
Austin, Texas 78701
Tel/Fax: (512) 865-7950

**ATTORNEYS FOR PLAINTIFF LEDCOMM LLC**